CHARTER ROOFING CO.,
INC., Appellant,

v.

TRI–STATE INSURANCE CO. and
Securance Corporation
Agency, Appellees.

No. C14–92–00177–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 5, 1992.

Rehearing Denied Dec. 31, 1992.

Macon D. Strother, Houston, for appellant.

David A. Carlson, David A. Carp, Theodore B. Jereb, Houston, for appellees.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

Charter Roofing appeals the trial court's granting of appellees' motions for summary judgment. Appellant brings eight points of error claiming the trial court erred in granting both motions for summary judgment because it had raised a fact issue as to its claims of the appellees' breach of the duty of good faith and fair dealing, as to the appellees' violation of DTPA and Insurance Code provisions, as to the applicable statute of limitations and as to appellant's violation of contractual provisions of the insurance policy. We affirm.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); TEX.R.CIV.P. 166a. The nonmovant is entitled to have all reasonable inferences made and all doubts resolved in his favor. *University of Texas Health Science Center at Houston v. Big Train Carpet of El Campo, Inc.* 739 S.W.2d 792 (Tex.1987).

The following summary judgment evidence was uncontroverted. On July 2, 1985, Charter Roofing Co., Inc. (Charter) purchased a general comprehensive liability policy from Tri–State Insurance Co. (Tri–State). Charter procured the services of Securance Corporation Agency (Securance) to facilitate in the purchase of the policy.

During July, 1985, Charter contracted with Weingarten Realty (Weingarten) to repair the roof of a shopping center in Louisiana. Charter subcontracted the work to another contractor, and this subcontractor then subcontracted the work to another company. On August 24, 1985, the property in Louisiana was damaged by a wind storm. Weingarten requested payment from Charter for the damages.

Charter sought the assistance of Securance in the handling of the claim. Securance gathered the information and delivered it to Tri–State. Once Tri–State received the information regarding Weingarten's claim, it began its own investigation. By September 16, 1985, Tri–State had hired George Newman, an experienced claims adjuster, to handle the Weingarten claim. Newman was based in Louisiana. Newman first spoke with Brian Walker, a Charter representative responsible for monitoring the claim, took a recorded statement from Mr. Walker and he visited the shop-

ping center and took photographs of the damage in late September. Newman also contacted the subcontractor who was actually on the job.

On September 24, 1985, Newman recommended to Tri–State's senior claim adjuster that the claim be denied because the work was not supervised by Charter, the insurance policy excluded coverage for damage caused by property in the care, custody and control of Charter and damage caused by Charter's workmanship. Newman received word from Tri–State on October 8, 1985 that it agreed with his recommendation. On November 25, 1985, Newman wrote Weingarten and informed them their claim had been denied, and he later received a telephone call from a Weingarten representative who indicated they had received the denial letter and they understood it dealt with their claim for the damages suffered on August 24, 1985.

On February 2, 1988, Charter voluntarily paid Weingarten $9,815.65 for the damages in order to preserve its good business relationship with Weingarten. Weingarten's claim had never been reduced to judgment as Weingarten had never filed suit against Charter, nor was there a writing between Charter and Weingarten to evidence their settlement. Charter filed suit against Tri–State and Securance on August 21, 1989.

■ In its first two points of error, Charter claims the court erred in granting Tri–State's amended motion for summary judgment because it had raised a fact issue as to whether Tri–State breached its duty of good faith and fair dealing and whether Tri–State had violated the Deceptive Trade Practices Act. Appellant fails to point us to any authority that establishes an action for the breach of good faith and fair dealing in this type of liability insurance policy. In Texas, there are three recognized claims of breach of good faith and fair dealing. This extra-contractual liability has been case-law developed.

The first type of extra-contractual liability occurs when an insurer fails to accept an offer of settlement after being given a reasonable time to do so and the insured then suffers a judgment in excess of its policy limits. *G.A. Stowers Furniture Company v. American Indemnity Company*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved); *Highway Insurance Underwriters v. Lufkin–Beaumont Motor Coaches, Inc.*, 215 S.W.2d 904 (Tex. Civ.App.—Beaumont 1948, writ ref'd n.r.e.). The courts have also recognized an extra-contractual claim for damages that arise from the handling of workers' claims for benefits under a workers compensation policy. *Aranda v. Insurance Company of North America*, 748 S.W.2d 210 (Tex.1988).

The last type of extra-contractual claim acknowledged by Texas courts revolves around first party insurance cases. *Arnold v. National County Mutual Fire Insurance Company*, 725 S.W.2d 165, 167 (Tex.1987). In *Arnold,* the court sought to protect the rights of the insured due to the unequal bargaining power of the parties and the ability of the insurance company to arbitrarily deny coverage and delay payment of claims. *Id.* *Arnold* established the duty of an insurer to deal fairly and in good faith with its insured in the processing and payment of claims. *Id.* Appellant cites *Arnold* as authority for its claim of Tri–State's alleged breach of the duty of good faith and fair dealing.

The facts of this case are distinguishable from *Arnold* and its progeny. The cases imposing the duty of good faith and fair dealing all deal with first-party claims against an insurer. *See e.g., Arnold,* 725 S.W.2d at 166–67; *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 130–31 (Tex.1988); These decisions concern claims brought by an insured that arose under their own insurance for damage suffered to their own property or their own personal injuries. The policy that Charter purchased was a comprehensive general liability policy. It was intended to cover claims made *against* Charter by third parties. All potential claims to be covered were those made by these third parties. In this case, the claim was made by Weingarten. As such, Charter had no claim. Appellant cannot point us to, nor have we found, any authority that has allowed a cause of action for breach of the duty of

good faith and fair dealing in this type of third-party insurance claim.

■ Even if this type of claim were to exist, Tri–State would still maintain the right to deny invalid or questionable claims based upon a reasonable investigation. The breach of the duty of good faith and fair dealing created by the *Arnold* decision arises if:

> there is no reasonable basis for denial of a claim or a delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.

725 S.W.2d at 167. Whether there is a reasonable basis for denial must be judged by the facts before the insurer at the time the claim was denied. *Viles v. Security Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).

The uncontroverted summary judgment evidence shows the claim by Weingarten arose on August 24, 1985. Tri–State, once informed of the claim, hired an experience adjuster to begin investigating the claim by September 16, 1985. By September 24, 1985 the adjuster had made his findings to Tri–State. Before making his findings the adjuster spoke with a representative of Charter. He investigated the scene and spoke with the subcontractor at the job site. Once he gathered this information he then made his report. Based upon his investigation the adjuster recommended the claim be denied. The adjuster based his recommendation on the fact that the work was not supervised by Charter and on the policy provision that excluded coverage for damage caused by property in the care, custody and control of Charter. Tri–State agreed with the adjuster's recommendation and a denial letter was sent to Weingarten on November 25, 1985.

Charter relies upon the affidavit of its president, John Jordan attached to its response to the motion for summary judgment, to show Tri–State had breached its duty. In his affidavit Jordan states Tri–State

> in bad faith and unfairly, failed and refused to pay the claim of Weingarten.... Tri–State ... failed to promptly communicate with Charter Roofing Co.

with respect to Weingarten's claim; failed to investigate the claim; ... did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of Weingarten Realty's claim; failed to process the claim; and unjustifiably denied the claim.

■ These statements are not statements of fact but are opinions and conclusions. Statements of opinions and conclusions in affidavits are not competent summary judgment proof. *Harley–Davidson Motor Co., Inc. v. Young*, 720 S.W.2d 211, 213 (Tex.App.—Houston [14th Dist.] 1986, no writ). As stated above, Tri–State established it had timely investigated the claim; it had direct contact with Charter; it had a reasonable basis for denial of the claim, and it timely notified Weingarten that its claim had been denied. Charter did not raise a fact issue as to any of these matters. Charter's first point of error is overruled.

■ Charter made many of the same allegations in support of its DTPA claim against Tri–State. Charter claimed Tri–State violated the DTPA by engaging in practices contrary to Section Four of Insurance Board Order 18663 by:

> (1) not attempting in good faith to effectuate prompt, fair and equitable settlements on the claim submitted in which liability had become reasonably clear;
>
> (2) by its unreasonable refusal to pay the subject claim;
>
> (3) by failing to promptly communicate Tri–State's purported denial of the claim;
>
> (4) by misrepresenting the insurance policy;
>
> (5) by failing to fairly deal with Charter Roofing Company.

Once again, in support of its claim against Tri–State, Charter relies solely on the Jordan affidavit. Charter failed to produce any competent evidence to refute the evidence presented by Tri–State. We find the same evidence offered by Tri–State to show it had not breached its purported duty of good faith and fair dealing also shows it did not violate the Deceptive Trade Practic-

es Act as alleged by Charter. Charter's second point of error is overruled.

In its fourth point of error, Charter asserts the trial court erred in granting Tri–State's summary judgment as to its breach of contract claim. Charter maintains it had raised a fact issue as to whether Tri–State had waived its right to the use of the defense of no action and no voluntary assumption of liability.

The uncontroverted summary judgment evidence established Charter made a voluntary payment to Weingarten in February of 1988. The claim had not been reduced to judgment nor had Charter, Tri–State and Weingarten entered into any type of written settlement agreement. This evidence clearly establishes Charter breached its contract with Tri–State. The policy in question provided that the insured could not voluntarily make any payment or assume any obligation except at its own cost. It further provided the insured had no action against the insurer unless the amount to be paid had been determined by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the insurer. The evidence demonstrates Charter was in violation of both provisions.

Charter argues Tri–State waived its right to insist upon compliance with the policy provisions because it claims to have unquestionably denied coverage. *See Gulf Insurance Company v. Parker Products, Inc.,* 498 S.W.2d 676, 679 (Tex.1973); *Ranger Ins. Co. v. Robertson,* 707 S.W.2d 135 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Owens v. Watson,* 806 S.W.2d 871 (Tex.App.—Corpus Christi 1991, writ denied). These cases are distinguishable from the present controversy. They all involve fact situations where the insurer refused to defend a suit after suit had been filed. In those situations Texas courts have held the insurer loses the right to insist on strict compliance with policy conditions. Tri–State did not refuse to defend Charter as the evidence shows suit was never filed against Charter. Therefore, Tri–State did not lose its right to insist upon full compliance with its policy provisions. Charter's fourth point of error is overruled.

In Charter's fifth, sixth and eighth point of error, Charter states the trial court erred in granting Securance's motion for summary judgment because it had raised fact issues as to all of its claims against Securance. Charter claimed Securance violated the DTPA and was negligent in handling the Weingarten claim. In addition, Charter alleged Securance breached the duty of good faith and fair dealing in its dealings with Charter.

The undisputed facts show Securance was no more than the procuring agent for Charter. Securance helped Charter obtain insurance from Tri–State. The insurance contract was between Charter and Tri–State. Securance was not the insurer.

Charter bases its claims against Securance on the fact that Securance offered to serve as a conduit between its client, Charter, and Tri–State relative to the Weingarten claim. It contends Securance failed to promptly communicate the denial of the claim, misrepresented the policy and misrepresented that the claim would be paid.

The summary judgment evidence clearly shows that Securance promptly notified Tri–State of Weingarten's claim. The investigation by Tri–State began less than one month after the occurrence. Once Tri–State began its investigation, it dealt directly with a representative of Charter. It no longer needed to deal with Securance to receive information. Securance was an agent only and did not have the ability to deny or pay the claim. Once Tri–State decided to deny the claim it promptly notified the claimant Weingarten.

Securance's summary judgment evidence establishes it did not on its own violate the DTPA nor was it negligent nor did it breach an alleged duty of good faith and fair dealing. Since we have overruled Charter's points of error regarding Tri–State, then Securance cannot be found to have violated these duties vicariously as an agent of Tri–State. Points of error five, six and eight are overruled.

As our disposition of the above points of error are dispositive of this appeal we need not discuss Charter's remaining points of

error dealing with the applicable statute of limitations.

Appellee, Securance asks this court to assess damages for delay against appellant, Charter Roofing Co., Inc. TEX. R.APP.P. 84. Securance contends this appeal was brought for no reason other than delay as it was clear Securance was only the procuring agent and Charter's claim, if any, was against its insurer Tri–State. Having presented no meritorious arguments by which this court could reverse the trial court, we agree with Securance, and order Charter to pay damages to Securance in the amount of $500.

The judgment of the trial court is affirmed.