INSURANCE COMPANY OF NORTH AMERICA and Indemnity Insurance Company of North America, Plaintiffs,

v.

MCCARTHY BROTHERS COMPANY, Defendant.

No. Civ.A. G–00–120.

United States District Court, S.D. Texas, Galveston Division.

Nov. 20, 2000.

---

David S. Lynch, Coats Rose Yale Holm Ryman & Lee, Houston, TX, for Plaintiffs.

John S. McEldowney, Greer Herz & Adams, Galveston, TX, Jonathan H. Anschell, White O'Connor et al, Los Angeles, CA, Michael J. O'Connor, White O'Connor et al, Los Angeles, CA, for Defendants.

### ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs, Insurance Company of North America and Indemnity Insurance Company of North America (collectively "INA"), bring this insurance coverage action against Defendant McCarthy Brothers Company ("McCarthy") seeking a declaration that INA has no duty to either defend or indemnify McCarthy. Now before the Court is Plaintiffs' Motion for Summary Judgment. For the reasons stated below, Plaintiffs' Motion for Summary Judgment is **DENIED**.

### I. FACTUAL SUMMARY

Some eleven-years ago, in July 1989, McCarthy entered into a contract with Shriners Hospitals for Children ("Shriners") to serve as general contractor in the construction of a hospital for burned children in Galveston, Texas. The now completed hospital offers free medical care to severely burned children, serving as a beacon of care and generosity in this community. "Shriners is charity at its apex." *Shriners Hosp. for Children v. McCarthy Bros. Co.*, 80 F.Supp.2d 707, 711 (S.D.Tex. 2000). Unfortunately, following its completion, the hospital's physical integrity became plagued by a series of leaks that caused substantial water damage throughout the facility. This led Shriners to sue McCarthy in Texas state court for the design and construction defects that allegedly caused these leaks. McCarthy maintains that it never notified INA of this first Shriners suit because the relevant insurance policy has a $500,000 deductible, which McCarthy deemed utterly unreachable in what it perceived to be a $25,000 lawsuit. Ultimately, Shriners and McCarthy entered into an agreement whereby, at Shriners' option, McCarthy would either remedy the deficient work or pay a sum of $25,000 to the hospital. Shriners, in due course, exercised its option to require McCarthy to remedy the damage. Upon learning, however, that the cost of repairs was expected to far exceed the contemplated $25,000, McCarthy balked. This forced Shriners to file a second lawsuit against McCarthy. In this second action, filed in

this Court, Shriners pled the facts of the settlement contract as well as those underlying facts regarding McCarthy's negligent construction of the hospital. After considering cross motions for summary judgment regarding the effect and meaning of the settlement agreement, this Court agreed with Shriners and required McCarthy to fix all of the hospital's various leaks that resulted from McCarthy's faulty design or construction.[1] This brings the Court to the present action.

McCarthy had purchased a commercial general liability insurance policy from INA that was to provide coverage during the hospital's construction. McCarthy seeks indemnification from INA for the expenses incurred to remedy its negligent work. INA contends, however, that it does not owe McCarthy indemnification and thus seeks a declaration to that effect. McCarthy has also asserted affirmative claims against INA for breach of the insurance contract, statutory unfair settlement practices, along with seeking a declaratory judgment that the insurance policy does cover the Shriners' claims. INA has now moved for a summary judgment. In essence, INA contends that, by settling the first Shriners' lawsuit, McCarthy extinguished any negligence cause of action, and that McCarthy's remaining liability to Shriners flows only from the settlement contract, a liability for which INA has no duty to indemnify.

In support of its Motion for Summary Judgment, INA argues that: (1) there has not been an "occurrence" covered by the insurance contract; (2) to the extent there has been an "occurrence," a coverage exclusion applies; (3) by settling the Shriners' state lawsuit, McCarthy violated one or more conditions precedent to coverage; and (4) it has no unexcusable duty under this insurance contract to defend McCarthy. In response, McCarthy contends that: (1) there has been an "occurrence;"

(2) no exclusion applies; and (3) it had no duty to notify INA of the first Shriners' suit, or to similarly refrain from settling without INA's consent, and that even if it had such duties, that INA has not shown prejudice as required by Texas law. McCarthy, however, agrees with INA in one regard: the insurance contract does not require INA to have defended McCarthy in either Shriners' action.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. See id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Cas. Co., 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inap-

---

1. See Shriners Hosp. for Children v. McCarthy Bros. Co., 80 F.Supp.2d 707 (S.D.Tex.2000)

(Kent, J.)

propriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## B. *An "Occurrence" Cometh*

■ The parties' briefs refer the Court almost exclusively to Texas law. Therefore, the Court assumes that Texas law applies to this dispute. *See Ferguson v. F.D.I.C.,* 164 F.3d 894, 897 (5th Cir.1999) (A party has " 'an obligation to call the applicability of another state's law to the [district] court's attention.' ") (quoting *Kucel v. Heller & Co.,* 813 F.2d 67, 74 (5th Cir.1987)), *cert. denied,* 528 U.S. 819, 120 S.Ct. 61, 145 L.Ed.2d 53 (1999). Under Texas law, a court shall apply the same rules of interpretation to insurance contracts as to contracts in general. *See Mat-*

*ador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 656 (5th Cir.1999). The Court's primary concern in interpreting a contract is to "ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). Thus, the Court "must ascribe to policy terms their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co.,* 61 F.Supp.2d 611, 617 (S.D.Tex.1999). In so doing, however, the Court will resolve any policy ambiguities in favor of the insured. *See id.*

■ In this matter, the parties dispute whether there has been an "occurrence" as required by the insurance contract. The insurance agreement provides that INA "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' ... caused by an 'occurrence." The contract then defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Texas courts have interpreted this type of policy language to encompass an insured's negligent conduct. *See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720, 724–25 (5th Cir.1999). As a result, INA would typically be required to indemnify McCarthy for its financial liability stemming from the physical damage to the hospital caused by McCarthy's negligence.[2] In this case, however, there is a catch. McCarthy, in settling its first lawsuit with Shriners, entered into a agreement that purported to extinguish Shriners' claims against McCarthy in exchange for McCarthy's agreement to either pay a fixed sum of money or remedy the actual damage caused by its negligence.

---

**2.** Of course, under the terms of the contract Plaintiffs need not reimburse McCarthy for those sums not in excess of the policy deductible.

■ As set forth above, McCarthy later balked at this settlement, leading Shriners to again sue McCarthy. INA seizes upon this settlement and now contends that as a matter of law there has not been an "occurrence," because the basis of McCarthy's liability is the settlement contract that McCarthy entered into following the state court Shriners lawsuit rather than McCarthy's purportedly extinguished underlying negligence. This argument is clever but incorrect. In Texas, the underlying liability facts, rather than the legal theory of liability, trigger the duty to indemnify. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997); *J.E.M. v. Fidelity & Cas. Co. of New York*, 928 S.W.2d 668, 673 (Tex.App.—Houston [1st Dist.] 1996, no writ) ("[T]he duty to indemnify is determined from the actual underlying facts which result in liability of the insured."); *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.—Dallas 1990, writ dism'd) ("[T]he duty to indemnify is based, not upon the pleadings, but upon the actual facts which underlie and result in the liability."). The entire reason this matter is now in Court for the third time is because McCarthy built Shriners a building that leaked like a sieve. *See Shriners*, 80 F.Supp.2d at 711 ("Intuitively, it follows that the leaks which caused [Shriners] to file suit in state court necessarily form the basis for the settlement agreement."). Admittedly this case has a unique posture that INA has attempted to exploit. However, McCarthy did not pay Shriners $780,000 because it breached the settlement agreement with Shriners, rather McCarthy paid Shriners because the hospital leaked. But for McCarthy's negligence, McCarthy would have owed Shriners no money. The converse of this statement, however, would not hold true, because had it not entered into the settlement agreement, McCarthy would still, as a practical matter, be liable to Shriners for its negligence. As required by Texas law, the Court looks to these underlying facts, all of which suggest to the Court that there has been a covered "occurrence." The Court simply will not interpret the term "occurrence" so narrowly as to ignore the reality of the situation before it.[3]

## C. The "Occurrence" Remaineth

■ INA next reurges its no "occurrence" argument under a different policy term. According to INA, McCarthy's claim for insurance benefits falls within an exclusion from coverage. The cited exclusion provides that: "This insurance does not apply to ... 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, there is also an exception to the exclusion, which states that "[t]his exclusion does not apply to liability for damages ... that the insured would have in the absence of the contract or agreement." In return, McCarthy urges that this portion of the insurance contract does not exclude coverage based upon an obligation accepted by the insured related to its own negligent conduct. If McCarthy's construction of the exclusion is a reasonable one, the Court must accept McCarthy's construction. *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991); *Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co.*, 61 F.Supp.2d 611, 619 (S.D.Tex.1999).

Contrary to INA's position, the exclusion at issue merely "operates to deny coverage when the insured assumes re-

---

**3.** INA mistakenly relies upon two Texas cases that it asserts demonstrate that there has not been a covered "occurrence" in this matter. *See Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973) (holding that an intentional tort is not a covered accident); *Gibson & Assocs., Inc. v. Home Ins. Co.*, 966 F.Supp. 468, 473 (N.D.Tex.1997) (holding that a breach of contract involving only economic loss is not a covered accident). These cases, however, are readily distinguished from the present scenario, as neither case involved the negligence of an insured which led to property damage, as was alleged by Shriners against McCarthy.

sponsibility for the conduct of a third party." *Federated Mutual*, 197 F.3d at 726 (so holding while applying Texas law to interpret the very same contractual language). Thus, as McCarthy was sued in the second Shriners' action for its own negligent conduct, rather than as a contractual indemnitor of a third party, the exclusion is inapplicable. *See id.* Moreover, the exception to the exclusion confirms this inapplicability, because McCarthy would have remained liable to Shriners for its negligence "in the absence of the [settlement] contract." *Cf. Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 944 (Tex.Civ.App.—Austin 1968, no writ) (holding that when a factual finding that would trigger a coverage exclusion "adds nothing to the insured's liability" the exclusion is not applicable). McCarthy's construction of the exclusion is not only reasonable but entirely accurate. To the extent that the policy denies coverage based upon McCarthy's accepting responsibility for its own conduct, INA must rely upon a condition precedent to coverage that deals more squarely with this issue. The Court next examines the effect of the contract's conditions precedent.

## D. *Violations of the Conditions Precedent*

INA next contends that McCarthy violated one or more of several conditions precedent to coverage. INA notes that McCarthy's failure to provide it with notice of the original Shriners lawsuit violated several "notice" conditions. Principally however, INA contends that when McCarthy settled that first Shriners' matter, the policy's "consent to settle" condition was violated.[4]

It is beyond dispute that the insurance contract placed certain obligations on McCarthy *vis a vis* INA. The policy required McCarthy to notify INA "as soon as practicable of an 'occurrence' . . . which may result in a claim." By endorsement, however, the policy went on to state that "[t]he failure in good faith of [McCarthy] . . . to recognize that such occurrence . . . may involve this insurance shall not operate to prejudice the rights of [McCarthy] . . . under the policy." Therefore, if McCarthy acted in good faith in not notifying INA of the first Shriners' suit, McCarthy's right to coverage should not be affected. INA has presented no evidence that McCarthy failed to act in good faith, and does not seem to. press this argument. In seeming recognition of the weakness of its notice argument, at least at the summary judgment stage, INA more vigorously presses its contention regarding the impropriety of McCarthy's settling this dispute without INA's consent. INA argues that the second Shriners' lawsuit, for which coverage is allegedly sought, involved the breach of an agreement by McCarthy, not McCarthy's negligence. The insurance contract provided that McCarthy was not to "assume any obligation" or "incur any expense" without INA's consent. McCarthy responds with three contentions. First, McCarthy argues that the condition precedent language is not triggered because McCarthy did not in fact assume a liability. Second, McCarthy argues that, in any event, Texas law excuses the good faith failure to comply with a condition precedent to coverage.[5] Third, according to

---

4. In its memorandum of law, INA casts this argument in broad terms, referring to McCarthy's impermissible attempt to bind INA to the terms of the first Shriners settlement agreement. The Court, however, rather than employing INA's rhetoric, will examine the actual conditions precedent that form the basis of INA's argument.

5. At least one Texas court has stated that, in certain circumstances, Texas law excuses the failure of an insured to provide contractually required notice to its insurer. *See Employers Cas. Co. v. Scott Elec. Co.*, 513 S.W.2d 642, 646 (Tex.Civ.App.—Corpus Christi 1974, no writ); *accord Dunn v. Travelers Indem. Co.*, 123 F.2d 710, 711–12 (5th Cir.1941); *but cf. Nan Travis Memorial Hosp. v. St. Paul Fire & Marine Ins. Co.*, 394 F.2d 112, 113 (5th Cir. 1968). More recently, however, the Fifth Circuit has come to a seemingly contrary conclusion. *See Sandefer Oil & Gas, Inc. v. AIG Oil*

McCarthy, INA must show prejudice in order to enforce a breached condition precedent under Texas law. Because the Court's disposition of the third issue will resolve this summary judgment, the Court addresses only that third contention.

■■■ In order to enforce a condition precedent to coverage, an insurer must prove that it was prejudiced by the insured's failure to comply with the relevant condition. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692–94 (Tex.1994); *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627 (5th Cir.1997); *Bay Electric*, 61 F.Supp.2d at 620. By demanding that an insurer prove prejudice, Texas law recognizes that only a material breach of a contract excuses performance. *See Hernandez*, 875 S.W.2d at 693. INA suggests that it was prejudiced per se by McCarthy's settlement of the first Shiners's action. However, the mere fact that the insurer may now owe money that it does not wish to pay does not constitute prejudice as a matter of law. *Cf. id.* at 693 (holding an insured's settlement must prevent an insurer from receiving the "anticipated benefit from the insurance contract" in order to constitute prejudice). Arguably, INA may stand on the same footing it would now stand upon if McCarthy had complied with the "consent to settle" clause. *See id.* at 693–94 (suggesting that if an insurer would have in fact given consent to the settlement there has been no prejudice).

INA relies heavily upon *Charter Roofing Co., Inc. v. Tri–State Ins. Co.*, 841 S.W.2d 903 (Tex.App.—Houston [14th Dist.] 1992, writ denied), which INA claims supports its argument that McCarthy cannot "bind" INA to its settlement with Shriners.

*Charter*, however, is distinguishable. The insured party in *Charter* did not argue that its insurer had not been prejudiced by its settlement. Instead, the insured maintained that the insurance company had waived its right to rely upon the "consent to settle" clause by allegedly denying the insured's request for coverage. *See id.* at 907. The court rejected this waiver argument, noting that the insurer had not formally and unequivocally denied coverage as suit had never been filed versus the insured. *See id.* Moreover, the *Charter* opinion predates the Texas Supreme Court's holding in *Hernandez* and the Fifth Circuit's holding in *Hanson*, which together require this Court to demand that an insurer establish prejudice in order to enforce a "consent to settle" condition precedent. The present dispute also differs greatly from INA's cited Texas cases in which an insured allowed itself to become subject to a default judgment stemming from an otherwise covered incident. *See, e.g., Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 (Tex.1993) (per curiam) (holding that an insured's failure to provide notice of suit until after a $3.2 million default judgment became final prejudiced the insurer as a matter of law); *accord Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 464–66 (Tex.App.—Dallas 1991, no writ).[6] Unlike these cases, the present dispute involves a sophisticated commercial entity, McCarthy, which has actively attempted to limit its own negligence liability. Shriners, in fact, had to sue McCarthy twice before McCarthy remedied its negligent conduct. Moreover, McCarthy allegedly apprised INA of the second Shriners' lawsuit in this Court, but INA apparently chose not to participate in that dispute. INA has provided no

*Rig of Texas, Inc.*, 846 F.2d 319, 325 (5th Cir.1988). In this matter, however, the contract itself provides for a "good faith" excuse. Arguably, the "good faith" excuse could apply to both the notice and settlement conditions precedent as these provisions are quite intertwined. Because other independent grounds support a denial of summary judgment, the Court will not address these issues.

**6.** INA also cites *Hefner v. Republic Indem. Co. of Am.*, 773 F.Supp. 11 (S.D.Tex.1991) in support of its proposition that it has been prejudiced as a matter of law in this dispute. *Hefner*, however, applied California law and is thus inapposite. *See id.* at 13.

summary judgment evidence of prejudice, and the Court declines to hold that it has been prejudiced as a matter of law on these facts. Accordingly, the conditions precedent cannot support summary judgment.[7]

### III. CONCLUSION

McCarthy paid INA to provide insurance coverage in the event of McCarthy's negligence. In its efforts to deny coverage, INA advances arguments suggesting that each of several contract provisions bar coverage in this matter. However, the Court declines to accept INA's myopic legal arguments. Instead, as required by both Texas law and common sense, the Court recognizes that this dispute stems from McCarthy's negligent construction of the Shriners' Hospital for Children. Plaintiffs' Motion for Summary Judgment is **DENIED**. Moreover, as Plaintiffs have not prevailed on this motion, their request for attorneys' fees as well as their request for summary judgment on Defendant's counterclaim are also necessarily **DENIED**. The Court further notes that it has not discussed Plaintiffs' duty to have defended the Defendant in the Shriners litigation, as Defendant now admits that no such obligation exists under the insurance contract making this issue moot.

**IT IS SO ORDERED.**

---

**7.** INA has also cited several other Texas cases as authority in support of its position. These cases are worthy of mention only in light of their egregiously spurious relevance to the present dispute. In *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 713–15 (1995) the Texas Supreme Court held that an insured defendant could not assign its rights versus the insurer to a plaintiff as part of an agreed judgment in which the plaintiff promised to limit its recovery versus the defendant personally. Similarly, in *State Farm Lloyds Ins. Co. v. Maldonado,* 963 S.W.2d 38, 40–41 (Tex. 1998) the court held that a judgment creditor could not recover versus an insurer when there had not been an "actual trial" as required by the insurance policy. *Laster v. American Nat'l Fire Ins. Co.,* 775 F.Supp. 985 (N.D.Tex.1991) once again involved an assignee plaintiff suing the insurance company. The present action does not involve an assignment of rights as troubled the courts in each of these cases. McCarthy is the insured suing its insurance company. These cases are utterly unhelpful to the Court's disposition of this matter, and frankly the Court is insulted by their citation.